HUNTER v. ROBESON, BLOCK & CO.

(*Jackson.*    June 4,   1895.)

MALICIOUS PROSECUTION.   *Conspiracy.*

A conspiracy is not necessary to render liable a Sheriff who makes a false return to a summons, and the creditor who willfully and recklessly procures it to be made for the purpose of procuring an attachment, although it is alleged.   The mere fact of the false return is sufficient to render the Sheriff liable, while the willfully and recklessly procuring it to be made will render the creditor jointly liable with the Sheriff.

FROM  SHELBY.

Appeal in error from Circuit Court of Shelby County.  L. H. ESTES,  J.

GANTT & PATTERSON for Hunter.

TURLEY & WRIGHT, L. and E. LEHMAN, and JAS. M. GREER for Robeson, Block & Co.

McALISTER, J.    This suit was commenced in the Circuit Court of Shelby County, by R. L. Hunter against Robeson, Block & Co. and A. J. McLendon, Sheriff, to recover damages for a false return upon a summons, to wit, "not to be found in my

county." The gravamen of the suit, as set out in the declaration, is that plaintiff was a merchant doing business in Memphis; that he bought goods on credit of defendants, Robeson, Block & Co., who were also merchants engaged in business in Memphis, and that, at the time of the injuries complained of, plaintiff owed defendants a debt of $159; that on August 2, 1890, and on Saturday night after business hours, plaintiff left the city to visit his wife, who was summering at Providence, Ky., expecting to return on the Monday following; that his business was carried on as usual by his employes in his temporary absence, and due inquiry at his house or place of business would have disclosed the fact that plaintiff was only temporarily absent; that on Monday, August 4, after the hour of 12 o'clock, a summons was sued out before J. P. Young, a Justice of the Peace, in an action brought by Robeson, Block & Co. against him to recover the debt of $159, which was placed in the hands of A. J. McLendon, Sheriff, who, at the instance of Robeson, Block & Co., was induced to return said summons with the indorsement "not to be found in said county;" that said return is in the handwriting of the attorney of Robeson, Block & Co. It is further alleged that said return was false, made at the instance and request, and with the knowledge and contrivance, of defendants, Robeson, Block & Co., and that the Sheriff (McLendon) was their passive agent in carrying out their designs; that upon this return a judicial attachment was at

once issued against the property of plaintiff, and levied upon part of his stock of merchandise, which was seized and carried away, and plaintiff's store closed.

Plaintiff further alleges that, on the part of Robeson, Block & Co., said attachment was a reckless, groundless, and oppressive assault upon the credit of plaintiff; that, in consequence of these proceedings, plaintiff was forced to suspend business, and make an assignment.

The defendants pleaded the general issue. At the September term, 1892, the cause was tried before Judge Estes and a jury, which trial resulted in a verdict and judgment in favor of the defendants. Plaintiff appealed, and has assigned errors.

The evidence submitted to the jury is not set out in detail, but there is a statement in the bill of exceptions that there was evidence tending to prove certain propositions. The object of plaintiff in thus abbreviating the testimony was to include only such portions of it as would present the errors of law alleged to have been committed by the trial Judge in his charge to the jury. This practice has been commended by this Court. *Huffman* v. *Hughlett & Pyatt*, 11 Lea, 549, 551, 552. The record recites, viz. :

"There was evidence tending to show that plaintiff, on August 2, 1890, and prior thereto, was in business as a merchant, with a stock of goods and fixtures, in the Collier building, on Main Street, in the

city of Memphis; that on Saturday evening, August 2, 1890, after business hours,. plaintiff left to visit his family, who were spending a part of the summer at Providence, Kentucky, with his father-in-law, intending to be gone only until Tuesday, and to be out of the city only a single business day; that prior to the time he left, and when he left, his business was going on as usual, and he left the same in charge of his clerks, leaving word with them that he would be back on Tuesday morning, and left a similar message with his employes at home; that he spent Sunday with his family at Providence, Kentucky, and returned to Memphis on Monday night, and reached his place of business early in the morning of August 5, 1890; that his absence was merely temporary, and during his absence a part of his stock of goods was attached and carried off and stored in the basement of defendant's storehouse, on Main Street; that the attachment was procured on the return of the Sheriff that he was not to be found in the county of Shelby, upon a warrant sued out by Robeson, Block & Co. before a Justice of the Peace, against plaintiff, for the sum of $159; that during plaintiff's absence, and up to the time of the levy of the said judicial attachment, his store was open, business going on as usual, and all of his clerks present.

"There was proof tending to show that plaintiff had long lived in Memphis, and for many years conducted business in said city; that after said return

of 'not to be found,' and the levy of said judicial attachment, he could get no further credit; that said return was in the handwriting of defendants' attorney, but signed by the Sheriff in his own proper hand; that all the written matter in the attachment was in the handwriting of defendants' attorney, and the names of defendants, Robeson, Block & Co., were signed to the attachment bond, by said attorney, who was their surety; that the Sheriff in charge of said summons called at the store of the plaintiff August 4, and inquired for plaintiff, and was informed that he had gone to Kentucky or Nashville, and would return in a day or two. Soon thereafter he went to the house of plaintiff, being furnished a hack in which to go, which was paid for by plaintiff's attorney, and was there informed that he would be back early next morning; that the attachment was issued about two hours after the summons was issued; that the officer in charge of the attachment went to the store of defendants, Robeson, Block & Co., and told them that he had an attachment in their favor against plaintiff, and desired some one to go with him to plaintiff's store who knew the value of goods, and direct him, so as to get goods enough to satisfy the attachment, and yet not make an excessive levy.

"A clerk of defendants, Robeson, Block & Co., was sent with him to the store of plaintiff. When they reached there, they found the store open, and business going on as usual, several clerks being en-

gaged in business. The Sheriff levied said attachment, taking a small quantity of goods, putting them in boxes furnished by defendants, and loading them on a dray employed in the business of defendants, and carried them to defendants' store, and placed them in the basement thereof.

"There was proof tending to show that plaintiff had good credit, and was not embrassed, and proof also tending to show embarrassment, and that his credit was not first rate.

"There was proof tending to show that defendants, Robeson, Block & Co., placed the said claim on plaintiff in the hands of their attorney, to act as he saw fit, intending to take the benefit of his action, and that the attorney· sued out a judicial attachment without further consultation.

"There was proof tending to show that plaintiff had not paid his bills to defendants promptly, being behind on balances as much as from thirty to sixty days, and that, when called on, some days before the attachment issued, for payment of the balance by the collector of Robeson, Block & Co., he requested him to return on August 4, and that the collector did so, and being informed, when he made such call on August 4, that plaintiff was out of the city, he reported the fact to the house of Robeson, Block & Co.

"There was proof tending to show that the Sheriff reported what he had done to defendant's counsel, and, upon consultation, was advised by said counsel

9—11 P

to make the said return on his summons, and that such return was written by said counsel, but signed by the Sheriff.

"There was proof tending to show that the Sheriff acted under the advice of counsel of his co-defendants, Robeson, Block & Co., in endeavoring to find plaintiff and get service on him, and that he reported what he had done.

"Plaintiff offered to prove that the *Memphis Avalanche* procured a judicial attachment against plaintiff immediately following the attachment sued out by defendants, Robeson, Block & Co., but the proof was excluded, as incompetent and irrelevant, by the trial Judge.

"Plaintiff offered in proof the assignment which he made next day, August 5, and, as he insisted, in consequence of the alleged false return and the judicial attachment, and the levy upon his goods, which was excluded on objection of defendants.

"On motion of defendant, the trial Judge excluded all evidence tending to show injury to plaintiff's credit by the levy of the attachment, but allowed evidence of the return upon which the same was issued, and the facts and circumstances tending to show whether said return was false or not, and the damages resulting from the return on the same, if false.

"Evidence of the publication for plaintiff to appear in the suit in which said attachment was issued, was excluded, on motion of defendants.

Hunter *v.* Robeson, Block & Co.

"On motion of defendants, all evidence was excluded showing the final disposition of the judicial attachment proceedings, on the ground that damages could not be recovered in this suit for the wrongful suing out of said attachment."

The first assignment of error is directed to the following portion of the charge, viz. : "He, plaintiff, must establish to your satisfaction, by a preponderance of the evidence, that the return 'not to be found in my county' (which means he was absconding or concealing himself), was false when made. If this point has not been established, you should consume no further time, but return a verdict for defendant, but, if you find this point in favor of plaintiff, then you will proceed to consider the next point in the controversy.

"2. He, plaintiff, must establish to your satisfaction, that Robeson, Block & Co. and the Sheriff entered into a conspiracy, by which the Sheriff was induced to make such return that Robeson, Block & Co. might use it as a ground to obtain a judicial attachment upon, and that it was used for that purpose. If this point has not been satisfactorily established, plaintiff's case must fail. If it has been, then he has gone far enough in his proof to authorize a judgment for at least nominal damages."

The objection to this charge is, that it instructs the jury they must be satisfied from the evidence that Robeson, Block & Co. and the Sheriff entered into a conspiracy by which the Sheriff was induced

to make a false return in order that Robeson, Block & Co. might use it as a ground upon which to obtain a judicial attachment. The criticism of learned counsel upon this charge is, that it was not necessary for a recovery, "that the Sheriff should have made the false return in order that it might be used as the ground for a judicial attachment by Robeson, Block & Co. The wrong done did not depend upon the use Robeson, Block & Co. intended to make of it. The Sheriff might have been wholly ignorant of their purpose, and the false return would have still been a wrong, if never used as grounds for a judicial attachment. To entitle plaintiff to recover against Robeson, Block & Co., it was not necessary to establish a conspiracy between them and the Sheriff to contrive and make the false return. The false return was a tort, if procured by Robeson, Block & Co., no matter how, or through what agency. It would be their wrong, for which they would be liable, whether anyone else participated in the same or not." We are of opinion that the criticism made upon the charge is sound, and is supported by the authorities. It was not an indispensable condition of plaintiff's right of recovery that a conspiracy should be established. It was admissible, without averment, to have proved a conspiracy, but, as stated by Mr. Cooley, in his work on Torts, viz. : "The damage is the gist of the action, not the conspiracy; and though a conspiracy may be set up, of itself a thing amiss, it must, nevertheless, be

looked upon as a mere unfulfilled intention of several to do a mischief.'' Pages 143, 144. Again, he says : '' Though a conspiracy is charged, yet, if, upon the trial the evidence connects but one person with the wrong actually committed, the plaintiff may recover against him as if he had been sued alone.'' Page 145.

In opposition to this rule, the Circuit Judge instructed the jury there could be no recovery unless it was shown that Robeson, Block & Co. and the Sheriff entered into a conspiracy to make a false return on the warrant, in order that it might be made the basis for a judicial attachment. If the Sheriff made a false return upon process that came to his hands, he is liable to the party aggrieved without proof that said false return was the result of a conspiracy entered into between him and any other person. Again, if it is shown that Robeson, Block & Co. wilfully or recklessly procured the Sheriff to make a false return which might be made the basis of a judicial attachment, said firm would be jointly liable with the Sheriff. It is obvious that the jury, in the investigation of this case, proceeded upon the idea there could be no recovery against either defendant without proof of a conspiracy. It appears that after retiring and deliberating for some time, the jury returned for additional instructions, which the foreman submitted in writing, as follows: '' If the Sheriff was induced or persuaded to make the return (not to be found) by Robeson, Block &

Co., or Mr. Lehman, does that constitute a conspiracy between the Sheriff and defendants?" In response to this request from the jury, his Honor proceeded to give the following instruction submitted by counsel for defendants, viz.: "A conspiracy is a corrupt combination of two or more persons by concerted action to commit an unlawful act, or a lawful act by unlawful means. Such a conspiracy is not only a civil wrong, but it is a crime for which the parties thereto may be indicted, and, if convicted, punished."

We think this charge erroneous, in that it makes the plaintiff's right to recover against either defendant dependent upon the proof of a criminal conspiracy. Says the learned editor of Webb's Pollock on Torts, p. 401, note: "A criminal conspiracy . . is different in both character and effect from conspiracy in connection with a civil action. By conspiracy in a civil action is meant the confederating and combining of two or more persons to jointly do something for which either of them, doing the same thing alone, would be civilly responsible to any person injured thereby. That is, a conspiracy cannot be made the subject of a civil action unless something is done which, without the conspiracy, would give a right of action." In the case of *VanHorn* v. *VanHorn*, 52 New Jersey Law, 286, the Court, in a very learned opinion touching the law of conspiracy, said, viz.: "Nor will it now be advantageous to show how long and difficult it was to separate

the idea of a criminal conspiracy at common law, where the agreement or conspiracy was the gravamen of the offense, from the real complaint in a civil action that the combination of two or more persons has enabled them to inflict a great wrong on plaintiff. The combination or conspiracy in the latter case was, therefore, a matter of aggravation and inducement only, of which one or all might be found guilty, while in the former it was essential to show that two or more persons had joined in an agreement to do an unlawful act, or to do a lawful act in an unlawful manner. The distinction is now well established that in civil actions the conspiracy is not the gravamen of the charge, but may be both pleaded and proved in aggravation of the wrong of which the plaintiff complains, and enabling him to recover against all as joint tort feasors. If he fails in the proof of a conspiracy, or concerted design, he may still recover damages against such as are shown to be guilty of the tort, without such agreement. It is, therefore, apparent that the damage done is the gist of the action, not the conspiracy." 52 N. J. L., 286; *Verplank* v. *VanBuren*, 76 N. Y., 259, 260.

The Court, therefore, was in error in instructing the jury that proof of a conspiracy was an essen tial condition of plaintiff's right to recover.

Reversed and remanded.